**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

RENEE DOLORIS THOMPSON,

       Plaintiff,

v.                                                                   Case No. 3:18-cv-606-J-JRK

ANDREW M. SAUL,[1]
Commissioner of Social Security,

       Defendant.
_____

## **OPINION AND ORDER**[2]

### **I. Status**

Renee Deloris Thompson ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability income benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of "chronic ankle pain due to tibia, fibula, ankle break"; neck spasms; "straightening [of the] normal cervical lordosis"; type 2 diabetes; high blood pressure; "c4-c5d central herniation abutting cervical spinal cord"; "significant degenerative disc disease in neck"; diverticulitis; "loss of intervertebral disc space h[ei]ght and signal"; "c4-c5 par[a]central disc protrusion"; a hiatal hernia; "esophageal manometry"; "congestive

---

[1]     Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 11), filed July 11, 2018; Reference Order (Doc. No. 13), entered July 12, 2018.

gastric mucosa"; hemorrhoids; anemia; menorrhagia; dyspareunia; high cholesterol; and depression. See Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed July 11, 2018, at 77-78, 91-92, 105-06, 122-23, 228 (emphasis omitted). Plaintiff filed an application for DIB on October 2, 2014[3] and for SSI on October 8, 2014,[4] alleging a disability onset date of August 27, 2014. Tr. at 203 (DIB); Tr. at 205 (SSI). The applications were denied initially, Tr. at 75, 77-88, 90, 140-42 (DIB); Tr. at 76, 89, 91-102, 137-39 (SSI), and upon reconsideration, Tr. at 103, 104, 105-18, 148-52 (DIB); Tr. at 120, 121, 122-35, 153-57 (SSI).

On April 12, 2017, an Administrative Law Judge ("ALJ") held a hearing, during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 49-73. Plaintiff was forty-six years old at the time of the hearing. Tr. at 56. The ALJ issued a Decision on June 28, 2017, finding Plaintiff not disabled through the date of the Decision. Tr. at 10-21.

On July 28, 2017, Plaintiff requested review of the Decision by the Appeals Council. Tr. at 202. The Appeals Council received additional evidence in the form of a brief authored by Plaintiff's counsel. Tr. at 4-5; see Tr. at 309-10 (brief). On March 15, 2018, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On May 3, 2018, Plaintiff commenced this action

---

[3] Although actually completed on October 2, 2014, see Tr. at 203, the protective filing date of the DIB application is listed elsewhere in the administrative transcript as October 1, 2014, see, e.g., Tr. at 77, 105.

[4] Although actually completed on October 8, 2014, see Tr. at 205, the protective filing date of the SSI application is listed elsewhere in the administrative transcript as October 1, 2014, see, e.g., Tr. at 91, 122.

under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes the following argument: "The ALJ's analysis of treating [physician Dr. Rene Pulido's opinions] regarding Plaintiff's physical limitations" was erroneous and contrary to law. Plaintiff's Memorandum – Social Security (Doc. No. 16; "Pl.'s Mem."), filed September 10, 2018, at 1, 14 (emphasis omitted). Although most of Plaintiff's argument revolves around the ALJ's handling of Dr. Pulido's opinions, Plaintiff also contends that "[t]he ALJ did not give legally sufficient good reasons to reject . . . Plaintiff's self-description of her limitations . . . ." see Pl.'s Mem. at 24; see id. at 16-24. On December 6, 2018, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings.

## II. The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations;

---

[5] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

(4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 12-20. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since August 27, 2014, the alleged onset date." Tr. at 12 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: history of right lower extremity fracture with residual limitations, adjustment disorder, degenerative disk disease, depression, and osteoarthritis." Tr. at 12 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 13 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 [C.F.R. §§ 404.1567(b) and 416.967(b)] except limited to unskilled work not requiring complex instructions or procedures; no climbing of ropes, ladders, or scaffolds; no work at unprotected heights or with hazardous machinery; occasional stooping, crouching, crawling, or kneeling; frequent use of foot controls with right lower extremity; occasional climbing of ramps or stairs; frequent overhead reaching bilaterally; frequent handling bilaterally; frequent interaction with co-workers and supervisors; and occasional contact with the general public.

Tr. at 15 (emphasis omitted).

At step four, the ALJ found that Plaintiff is "unable to perform any past relevant work." Tr. at 19 (emphasis and citation omitted). At step five, after considering Plaintiff's

age ("44 years old . . . on the alleged disability onset date"), education ("a limited education"), work experience, and RFC, the ALJ relied on the testimony of the VE and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 19 (emphasis and citation omitted), such as "laundry folder," "mail sorter," and "inspector/hand packager," Tr. at 20. The ALJ concluded that Plaintiff "has not been under a disability . . . from August 27, 2014, through the date of th[e D]ecision." Tr. at 30 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the

Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted above, Plaintiff takes issue with the ALJ's analysis of Dr. Pulido's opinions and the ALJ's evaluation of Plaintiff's subjective complaints. The undersigned addresses each issue in turn.

### A. Dr. Pulido's Opinions

#### 1. Parties' Arguments

Plaintiff contends that "[t]he ALJ gave 'little weight' to Dr. Pulido's opinion, even though it is uncontradicted by any examining source of record, stating that it was not consistent with the evidence as a whole, 'particularly the objective findings.'" Pl.'s Mem. at 19 (emphasis and citation omitted). Plaintiff argues that "the ALJ did not offer any details as to which 'objective findings' did not support the opinion." Id. at 19 (citation omitted). According to Plaintiff, the ALJ's discussion of the evidence was "extremely selective." Id. at 22.

Responding, Defendant identifies the evidence discussed by the ALJ, with citations to the record. See Def.'s Mem. at 6-8. In addition, Defendant points to the opinion of Dr. Robert Steele (the state agency medical consultant who reviewed the evidence at the reconsideration level), which the ALJ gave "good" weight to. Id. at 8 (citation omitted).

## 2. Applicable Law

The Regulations[6] establish a "hierarchy" among medical opinions[7] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5) (2006)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f).

With regard to a treating physician[8] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c)(2). Because treating

---

[6] As noted, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions, 82 Fed. Reg. 5844-01, 5844. Because Plaintiff filed her claims before that date, the undersigned cites the rules and Regulations applicable to Plaintiff's claims, unless otherwise noted.

[7] "Medical opinions are statements from physicians or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"); 20 C.F.R. § 404.1513(a).

[8] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent

physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

---

with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

### 3. Dr. Pulido's Treatment and Opinions

Dr. Pulido is Plaintiff's primary care physician at Emed Primary Care and Urgent Care Clinic ("Emed"). The administrative transcript contains more than fifty treatment notes from Emed dated May 2015 through October 2016. See Tr. at 1367-625. At Emed, Plaintiff had appointments with Dr. Pulido and with other physicians who were directly supervised by Dr. Pulido. See Tr. at 1367-625.

In 2015, Dr. Pulido saw Plaintiff on a monthly basis, sometimes multiple times a month. See Tr. at 1537-40, 1554-62, 1567-625. In July 2015, for example, Plaintiff had six appointments with Dr. Pulido. See Tr. at 1583-605. In 2016, Dr. Pulido did not see Plaintiff as often as she did in 2015, but Plaintiff's treatment at Emed continued to be extensive, sometimes consisting of multiple visits in one month. See Tr. at 1367-524. For example, in June 2016, Plaintiff had five appointments. See Tr. at 1410-33.

On October 26, 2015, Dr. Pulido completed a Physical Medical Source Statement containing opinions regarding the effects of Plaintiff's physical impairments on Plaintiff's

ability to perform work-related functions. See Tr. at 1048-50. Dr. Pulido opined as follows. Plaintiff's impairments are reasonably consistent with the symptoms and limitations described in the Medical Source Statement. Tr. at 1048. Plaintiff's symptoms are severe enough to constantly interfere with her attention and concentration needed to perform even simple work tasks during the workday. Tr. at 1048. Plaintiff can walk less than two city blocks without needing to rest or without severe pain. Tr. at 1049. She can sit and stand for an hour and ten minutes each. Tr. at 1049. Plaintiff can stand/walk and sit for less than two hours each in an eight-hour workday. Tr. at 1049. In an eight-hour workday, she needs to take unscheduled breaks every hour. Tr. at 1049. Each break lasts more than one hour. Tr. at 1049.

Further, Plaintiff needs to elevate her legs with prolonged sitting. Tr. at 1049. Plaintiff sometimes needs to use a cane or other assistive device when engaging in occasional walking and standing. Tr. at 1049. Plaintiff can occasionally lift less than ten pounds. Tr. at 1049. She cannot lift more than ten pounds. Tr. at 1049. Plaintiff's impairments are likely to produce both "good" and "bad" days. Tr. at 1050. As a result of her impairments and treatment, she would likely be absent from work two days per month. Tr. at 1050. Plaintiff's impairments require her to lie down for up to one hour at unscheduled times during an eight-hour workday. Tr. at 1050.[9]

**4. Analysis**

The ALJ stated the following with regards to Dr. Pulido's opinions:

[Dr. Pulido] completed a medical source statement and opined [Plaintiff] was not capable of even sedentary work. However, little weight is given to this

---

[9] In the Medical Source Statement, Dr. Pulido answered "yes" to the question "Is your patient a malingerer?" Tr. at 1048. In light of the rest of Dr. Pulido's opinions, it is reasonable to assume her answer is a typographical error. Further, neither the ALJ nor Defendant mention this answer.

> opinion, as it is not consistent with the evidence as a whole particularly the objective findings. While [Plaintiff] has limitations, the evidence, as discussed in the [D]ecision previously, does not support an inability to perform even sedentary work.

Tr. at 16 (citation omitted).

The evidence the ALJ "discussed in the [D]ecision previously," Tr. at 16, is scant; the ALJ laid out in one paragraph some of the voluminous medical evidence of Plaintiff's physical impairments. See Tr. at 16. Importantly, the ALJ did not discuss any of the objective evidence that, according to him, does not support Dr. Pulido's opinions. The ALJ stated that "[t]here [is] evidence of multi-level degenerative disk disease in [Plaintiff's] cervical and lumbar spine," but he did not explicitly refer to any objective evidence. Tr. at 16. At the end of the brief paragraph describing the evidence regarding Plaintiff's physical impairments, the ALJ cited twelve exhibits, with no page numbers. See Tr. at 16. The exhibits cited total nearly 900 pages. See Tr. at 311-41, 422-814, 869-937, 952-1003, 1057, 1122-29, 1164-281, 1365-654, 1712-30, 1751-85, 2029-43. Oddly, one of these exhibits (Exhibit 22F) states that it "has been removed as it pertains to another claimant." See Tr. at 1057. The ALJ's conclusory statement that Dr. Pulido's opinions are inconsistent with the "evidence as a whole" and his citation to exhibits in general, without any page numbers, Tr. at 16, frustrates judicial review. On remand, the ALJ shall support his conclusions with specific findings, adequate explanations, and specific citations to the record.

**B. Plaintiff's Subjective Symptoms**

   **1. Parties' Arguments**

Plaintiff contends the ALJ failed to give "legally sufficient good reasons" to reject Plaintiff's subjective complaints. Pl.'s Mem. at 24. According to Plaintiff, the ALJ's discussion of Plaintiff's activities of daily living is "extremely selective." Id. at 22; see id. at 22-23. Plaintiff asserts that "when an ALJ misstates and/or misrepresents those activities, such a finding cannot be substantial evidence supporting his decision to deny benefits." Id. at 23. Responding, Defendant notes that the ALJ "considered Plaintiff's statements about her daily activities." Def.'s Mem. at 8 (citation omitted). Defendant then summarizes the ALJ's findings as to Plaintiff's activities of daily living, with citations to the record. See id. at 8-9.

   **2. Applicable Law**

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223.

"When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and

aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). To reject a claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

The SSA recently issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." Social Security Ruling 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017).[10] "In doing so, [the SSA has] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." Id. Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id. "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

---

[10] There was a prior version of SSR 16-3P in place at the time of the ALJ's Decision. See SSR 16-3P, 2016 WL 1119029 (Mar. 16, 2016). The same relevant language quoted in this Opinion and Order appears in this prior version. See id. at *1.

### 3. Analysis

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] impairments are not consistent with the objective medical evidence." Tr. at 16. The ALJ's rejection of Plaintiff's subjective symptoms suffers from a number of critical deficiencies.

The ALJ stated that in assessing Plaintiff's subjective allegations, he "must consider" the factors set out in the Regulations. Tr. at 15 (citing 20 C.F.R. §§ 404.1529, 416.929). Upon review of the Decision, however, it is unclear whether the ALJ actually considered these factors. The ALJ merely concluded that Plaintiff's statements are inconsistent with the objective medical evidence without any explanation. See Tr. at 16. Like the ALJ's evaluation of Dr. Pulido's opinions, see supra p. 11, the ALJ's analysis of Plaintiff's subjective symptoms was erroneous because the ALJ failed to explain how the objective evidence is inconsistent with Plaintiff's subjective symptoms.

To the extent the ALJ relied on Plaintiff's daily activities—discussed much later in the Decision, see Tr. at 18-19—the ALJ failed to consider certain evidence regarding Plaintiff's activities. The ALJ found that Plaintiff "cares for a child with cerebral palsy," Tr. at 18, but did not recognize Plaintiff's testimony that she has a nurse that helps her take care of her daughter during the day from 9:00 AM to 5:00 PM and at night/early morning from 9:00 PM to 5:00 AM, Tr. at 61; see also Tr. at 243 (stating that "nurse helps [Plaintiff] care for [her] daughter with disabilities (Total Care)"). Indeed, elsewhere in the Decision, the ALJ stated that Plaintiff "reported <u>full, active day</u> caring for her daughter after her daughter's nurse leaves in the morning" Tr. at 18 (emphasis added). This is not an

accurate portrayal of Plaintiff's statements. Moreover, Plaintiff clarified that her husband also helps her care for her daughter. Tr. at 243.

The ALJ stated that Plaintiff can perform "household chores," Tr. at 18, but that is not a complete and accurate portrayal of Plaintiff's statements and testimony. Although Plaintiff stated she performs some household chores, such as sweeping and washing dishes, she also stated that her husband cleans the tub, folds laundry, hangs up clothes, and does "all the strenuous things, repairs, [and] mowing the lawn." Tr. at 244. Plaintiff testified that when she "do[es] some things at home," she does them at her "own pace." Tr. at 60. She said, "I don't do them at long periods of time; I break in between, as long as I can do it." Tr. at 60. Plaintiff stated that her children also do some chores and that they are "not messy, so it's not like they do a whole lot, either." Tr. at 61. Upon review of Plaintiff's statements as a whole, it is clear that the household chores she does are minimal and not inconsistent with her alleged symptoms, she takes numerous breaks while she does them, and she receives help from others in doing them. Plaintiff's performance of "everyday activities of short duration, such as housework" is insufficient. Lewis, 125 F.3d at 1441. "[T]he ALJ's discretionary power to determine the credibility of testimony is limited by his obligation to place on the record explicit and adequate reasons for rejecting that testimony." Holt, 921 F.2d at 1223. This, the ALJ failed to do.

Although there is no rigid requirement that the ALJ specifically refer to every piece of evidence, the ALJ's failure to meaningfully address Plaintiff's activities of daily living constitutes such a broad rejection that judicial review is frustrated. See Dyer, 395 F.3d at 1211. On remand, the ALJ must consider Plaintiff's daily activities as a whole.

## V. Conclusion

For the foregoing reasons, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

   (A) Reevaluate the opinions of Dr. Rene Pulido and articulate the reasons for the weight given to them;

   (B) Reevaluate Plaintiff's subjective complaints, and if the complaints are rejected, clearly articulate the reasons for doing so; and

   (C) Take such other action as may be necessary to resolve this matter properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** in Jacksonville, Florida on August 14, 2019.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of Record